IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-HC-2136-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| | ) | |
| KEVIN MICHAEL SHEA | ) | |

Petitioner, the United States of America ("the government") instituted this civil action on July 12, 2011, seeking to commit Kevin Michael Shea as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act") [DE 1]. 18 U.S.C. § 4248. The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act. A certificate filed under the Act stays Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed on June 22, 2011, seventy-five days prior to Respondent's scheduled date of release from BOP custody on September 26, 2011 [DE 1].

## BACKGROUND

An evidentiary hearing was held before this Court on February 27, 2012 pursuant to 18 U.S.C. § 4247(d). The Court directed the parties to file proposed findings of fact and conclusions of law. After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, the Court makes the following findings of fact and

conclusions of law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure:

The Court adopts and incorporates as fully set forth herein Respondent's findings of fact in Sections I-VI of docket entry 39, excepting the following portions: Section II, ¶¶ 2, 3, 17; Section IV, ¶¶ 23-36; Section V, ¶¶ 38-43. The Court concludes that although the government has met its burden to demonstrate that Mr. Shea has committed acts of child molestation and that Mr. Shea suffers from a serious mental illness, abnormality, or disorder, the government has failed to establish by clear and convincing evidence that Mr. Shea would have serious difficulty refraining from sexually violent conduct or child molestation if released. Therefore, the government is ordered to release Mr. Shea.

## DISCUSSION

### I. Pending Motions

Mr. Shea has filed a Motion to Dismiss for Lack of Jurisdiction [DE 25] and a Motion to Dismiss and Preserve Constitutional Issues [DE 32]. The United States has filed a Motion to Hold Court's Ruling in Abeyance [DE 44].

#### A. Motion to Dismiss for Lack of Jurisdiction

Mr. Shea argues that the United States has failed to establish subject matter jurisdiction over this case. He asserts that mere physical custody on the date of certification is insufficient to establish subject matter jurisdiction and that the government must establish that the BOP had lawful authority over Mr. Shea's custody on the day that his certification was filed, citing to *United States v. Joshua*, 607 F.3d 379, 387-88 (4th Cir. 2010). In other words, Mr. Shea claims that he was unlawfully confined beyond his legally proper release date and that this fact renders subject matter jurisdiction absent in this case.

On December 4, 1998, Mr. Shea was on parole after serving an active state sentence in

Indiana for felony child molestation. On that date, he was arrested by the Indianapolis Police Department for child exploitation, possession of child pornography, and possession of marijuana. On December 8, 1998, Mr. Shea had an initial hearing on these charges. At the hearing, Judge Amy Barnes granted the state prosecutor's request for a 72-hour continuance, during which Mr. Shea would be held without bond. On December 10, 1998, the United States Attorney for the Southern District of Indiana charged Mr. Shea with possession of child pornography and receiving child pornography. On December 11, 1998, Mr. Shea returned to state court for his initial hearing. The state prosecutor declined to file charges and Judge Amy Barnes ordered Mr. Shea to be released. That same day, Mr. Shea was arrested by the United States Marshall and remained in jail pending disposition of his federal charges. Also on that day, the Marion County Clerk of Court entered a final disposition of his state case, dismissing the matter for lack of formal charges.

On February 8, 2000, the United States District Court for the Southern District of Indiana entered judgment against Mr. Shea, sentencing him to 150 months of imprisonment and five years of supervised release. Adjusting for good time credit, the BOP projected Mr. Shea's release date to be October 27, 2009. On May 24, 2000, the BOP issued a memorandum, concluding that Mr. Shea's new projected release date was September 26, 2011, given that the allegation that he violated his state parole was not disposed of. Mr. Shea contends that he was never served with a state parole violation warrant and that no documents demonstrate that Mr. Shea's parole was actually violated. Mr. Shea asserts that he disputed this recalculation to the Inmate Systems Manager at FCI Manchester in 2000, who informed Mr. Shea that his only course of action would be to pursue his claim in the Indiana judicial system, not in the BOP. On July 12, 2011, during this contested time period, Mr. Shea was certified as a sexually dangerous

person pursuant to 18 U.S.C. § 4248.

The credit a defendant is entitled to receive for time in custody prior to being received by a federal prison is governed by 18 U.S.C. § 3585(b):

> A defendant shall be given credit towards the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

Mr. Shea now argues that, because he was not produced in federal court through a writ of habeas corpus *ad prosequendum*, he was under the primary jurisdiction of the federal authorities and that he is therefore entitled to credit toward his federal sentence under 18 U.S.C. § 3585(b). Mr. Shea contends that the BOP's decision to deny him credit was "predicated on the false premise that his state charges were never dismissed or that he was never released from state custody prior to the federal charge" [DE 25 at 9].

Mr. Shea is correct to point out that, under section 4248, the word "custody" refers to legal custody and not to physical custody. *Joshua*, 607 F.3d at 388. However, the government does not assert that Mr. Shea's mere presence in a federal BOP facility provides the basis for its conclusion that Mr. Shea was in custody on the date of his certification. Rather, the government relies upon the Attorney General's conclusion that Mr. Shea was in custody at this time, as evidenced by the BOP memorandum dated May 24, 2000. Authority to calculate jail credit is conferred upon the Attorney General. *United States v. Wilson*, 503 U.S. 329, 334 (1992). Federal regulations provide prisoners with a process in which to seek administrative review of the computation of their time credit. *See* 28 C.F.R. §§ 542.10-542.19 (2012). Judicial review is available to prisoners after exhausting these administrative remedies. *Wilson*, 503 U.S. at 335-

36. Absent any indication that Mr. Shea exhausted his administrative remedies, the Court declines to consider the proper calculation of his jail time credit, as the matter is not properly before it.

### B. Motion to Dismiss and Preserve Constitutional Issues

Mr. Shea has filed this motion to preserve certain issues for appeal, but recognizes that this Court is bound by the holding in *United States v. Timms*, 664 F.3d 436 (4th Cir. 2012), which forecloses this Court's consideration of these issues. Accordingly, the motion is denied.

### C. Motion to Hold Court's Ruling in Abeyance

The United States filed this motion to hold the Court's ruling in abeyance. As the matter motivating the request has been resolved and the case is now ripe for adjudication, this motion is denied as moot.

### II. Commitment Pursuant to 18 U.S.C. §4248

To obtain a commitment order against Mr. Shea, the government is required to establish three distinct facts by clear and convincing evidence: that Mr. Shea (1) "has engaged or attempted to engage in...child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) "currently suffers from a serious mental illness, abnormality, or disorder"; and (3) as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from...child molestation if released," 18 U.S.C. § 4247(a)(6). *See United States v. Comstock*, 627 F.3d 513, 515-16 (4th Cir. 2010). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418,

423-24 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and "beyond a reasonable doubt").

***A. Whether Respondent has engaged in or attempted to engage in sexually violent conduct or child molestation.***

The Court finds that the government has proven by clear and convincing evidence that Mr. Shea has engaged in child molestation as described in the criminal and sexual offense history of Respondent's findings of fact [DE 39 at ¶¶ 7-14]. Mr. Shea does not contest that he has engaged in child molestation in the past.

***B. Whether Respondent currently suffers from a serious mental illness, abnormality, or disorder.***

The government asserts that Mr. Shea currently suffers from pedophilia , sexually attracted to males, nonexclusive type; and paraphilia, not otherwise specified ("NOS") [DE 40 at 21]. The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (DSM-IV-TR) requires that the following criteria be met to support the pedophilia diagnosis: (1) over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children; (2) the person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and (3) the person is at least age 16 years and at least 5 years older than the child or children. DSM-IV-TR at 572. The Court finds that the government has established by clear and convincing evidence that Mr. Shea suffers from pedophilia, sexually attracted to males, nonexclusive type.

All three experts concur in this diagnosis, but Dr. Plaud expressed concerns regarding whether Mr. Shea currently suffers from a pedophilia at a level that could be characterized as

serious. In support of a currently-operative pedophilia diagnosis, Dr. Phenix noted Mr. Shea's "long-standing history of sexual arousal and behaviors with males ranging in age from 9 to 15 years" and the fact that "[h]is offending against prepubescent boys spans 20 years." Pet'r Ex. 3 at 1464. Dr. Plaud agreed that the diagnosis could be applied to Mr. Shea historically, but questioned whether, at the time of the evidentiary hearing, Mr. Shea "has recurrent or intense sexually arousing fantasies, urges or behaviors involving pre-pubescent males." Resp't Ex. 1 at 48 (emphasis in original). The Court credits Dr. Phenix's testimony on this diagnosis, in light of her clinical interview and thorough review of Mr. Shea's offending history, as well as her detailed discussion of Mr. Shea's satisfaction of the elements of the pedophilia diagnosis. The Court acknowledges Dr. Plaud's reservations, but finds that Dr. Phenix's testimony that pedophilia is a chronic condition for Mr. Shea is more credible given the underlying facts and circumstances of this case, including the lack of indicators that this mental disorder has abated.[1] In her testimony, Dr. Phenix specifically cited to Mr. Shea's attempt to groom an 11-year-old boy prior to his most recent conviction as evidence that Mr. Shea continues to suffer from pedophilia.

Drs. Phenix and Coard also diagnosed Mr. Shea with paraphilia NOS, in an attempt to address Mr. Shea's offending against pubescent boys in the context of a serious mental disorder. However, this purported mental illness (paraphilia NOS (hebephilia) or paraphilia NOS (pedohebephilia)) is not listed as an accepted mental disorder in the DSM-IV-TR. Although hebephilia has been proposed to be included as a mental disorder in the revision of the DSM, it

---

[1] It should be noted that the Court distinguishes between the second and third inquiries of the Act and that, of course, lack of abatement of a serious mental disorder does not necessarily imply that an individual would have serious difficulty in refraining from sexually violent conduct or child molestation as a result of that disorder. *See United States v. Hall*, 664 F.3d 456, 463 (4th Cir. 2012) (citing *Crane*, 534 U.S. at 413) (noting the critical role of "volitional impairment" in civil commitment analysis).

has been rejected as a proper mental disorder by numerous psychologists, including Dr. Plaud, who testified at the evidentiary hearing. The Court credits the testimony of Dr. Plaud on this issue. Given that even the government's experts concede that characterization of hebephilia is a hotly contested issue in the mental health community, the Court finds that it would be inappropriate to predicate civil commitment on a diagnosis that a large number of clinical psychologists believe is not a diagnosis at all, at least for forensic purposes.

### C. Whether, as a result of the illness, abnormality, or disorder, the Respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Although the Court finds that the government has met its burden to prove the first two elements for commitment by clear and convincing evidence, it finds that the government failed to meet its burden to prove that Mr. Shea would have serious difficulty in refraining from sexually violent conduct or child molestation if released. As noted by the Fourth Circuit in *United States v. Hall*,

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety...provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

*Hall*, 664 F.3d at 463.

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments. These instruments include the Static-99R, the Static-2002R, the MnSOST-R, and MATS-1. It is

important to note that these actuarial risk assessments reflect relative risk among various large groups of individuals and do not provide specific risks or probabilities for any individual [DE 39 at 15]. On the Static-99R, Drs. Phenix and Coard scored Mr. Shea as an 8. On the Static-2002R, Dr. Phenix scored Mr. Shea as an 11. On the MnSOST-R, Dr. Phenix scored Mr. Shea as an 11.[2] On the MATS-1, Dr. Plaud scored Mr. Shea as a 6.

Dr. Phenix opined that Mr. Shea would have serious difficulty in refraining from sexually violent conduct or child molestation if released because (1) he "received very high probabilities of reoffense on Static-99R and Static-2002R," (2) he has declined sex offender treatment in the BOP despite having reoffended in the past, and (3) "he reoffended very soon after his release from a prior sexual offense." Pet'r Ex. 3 at 1475. Dr. Coard opined that Mr. Shea would have serious difficulty in refraining because (1) "his patterns of offending against children have continued despite detection and the benefits of legal sanctions," (2) he did not complete the sex offender treatment program offered in the state of Washington, and (3) he "has violated the conditions of his conditional release." Pet'r Ex. 6 at 298.

Dr. Plaud opined that Mr. Shea would not have serious difficulty in refraining from sexually violent conduct or child molestation if released because (1) at 57 years old, his likelihood of recidivism has declined significantly due to age, (2) his conduct at BOP has been nearly infraction-free[3], and (3) there is no recent evidence of Mr. Shea engaging in sexually

---

[2]The MnSOST-R has been recently repudiated by its developers. Dr. Phenix testified that she no longer finds the test to be sufficiently reliable but that her conclusions about Mr. Shea's likelihood of experiencing serious difficulty in refraining are not affected by removing the MnSOST-R score from her evaluation [DE 40 at 11 n.2].

[3]From March 28, 2000 until the date of the evidentiary hearing, Mr. Shea had received only one disciplinary infraction at the BOP in April 2004 for giving and receiving money (due to his participation in a radio trivia contest).

deviant or inappropriate behavior. Mr. Shea has not been cited for possession or creation of inappropriate materials while in the custody of the BOP.

The Court notes that Drs. Phenix and Coard have relied on Mr. Shea's conduct from before his current incarceration, dating from 1998 at the latest, to conclude that Mr. Shea would currently have serious difficulty in refraining from sexually violent conduct or child molestation. Although Mr. Shea has been in an institutional setting in the interim, the Court credits Dr. Plaud's testimony on Mr. Shea's likelihood of experiencing serious difficulty and finds significant that Mr. Shea has demonstrated significant volitional control in remaining virtually infraction-free in the BOP, with the exception of one non-sexual citation. The Court also notes that Mr. Shea's age decreases his likelihood of future reoffense. Looking at Mr. Shea's current condition as a whole, the Court finds that these individualized, currently-operative protective factors outweigh his higher scores on certain actuarial assessments and his failure to complete sex offender treatment while incarcerated.

In addition, the Court finds Mr. Shea to be a credible witness. He appeared to understand the detrimental effects of his past crimes and to be genuinely remorseful for his behavior. Mr. Shea testified that he has formulated a release prevention plan, including plans for employment through operation of a towing business and a commitment to participating in court-ordered sex offender treatment while on supervised release.

Furthermore, Mr. Shea will be on supervised release for a term of five years upon his release from BOP custody. Pet'r Ex. 15 at 14. The conditions of his supervised release include, among other requirements, participation in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders, registration as a sex offender, submission to polygraph testing, restrictions on the possession and use of a computer, restrictions

on lines of credit, prohibition on the possession of alcoholic beverages, prohibitions on the access and possession of pornographic material or pictures of juveniles under the age of eighteen, and prohibitions on contact with anyone under the age of eighteen. Pet'r Ex. 15.

Dr. Phenix noted in her report that Mr. Shea had expressed to her in his clinical interview that "he feels like he crested a mountain and 'beat the demons.' He described an ability to focus on things besides sex and said he has not been able to do that before. He said he feels like he is in a better place now than he has ever been." Pet'r Ex. 4 at 1653. The Court finds these statements to be consistent with Mr. Shea's behavior while incarcerated, with his testimony at the evidentiary hearing, and with his genuine desire and ability to conform his behavior to the law upon his release.

## CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of Respondent, Kevin Michael Shea, and against the Petitioner, the United States of America. The government is ORDERED to release the Respondent, Kevin Michael Shea, forthwith to the custody and supervision of the appropriate United States Probation Office. This action is hereby DISMISSED. Mr. Shea's pending Motions to Dismiss [DE 25, 32] are DENIED. The United States' Motion to Hold Court's Ruling in Abeyance [DE 44] is DENIED AS MOOT.

SO ORDERED. This 6 day of July, 2012.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE